UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
JOHN A. BARTOLINI,

                          Plaintiff,

    -against-                           **ORDER**
                                          17-CV-6276-PKC-SJB
MICHAEL F. MONGELLI ESQUIRE,
LIONEL BING MARKEE,
LEILA ALI,
WILLIAM R. GREENSPAN ESQUIRE,
HONORABLE PETER J. KELLY,

                          Defendants.
------------------------------------------------------------------X

**BULSARA, United States Magistrate Judge:**

        Plaintiff John A. Bartolini ("Bartolini") commenced this action against Defendants Michael F. Mongelli ("Mongelli"), Lionel Bing Markee ("Markee"), Leila Ali ("Ali"), William R. Greenspan ("Greenspan"), and the Honorable Peter J. Kelly ("Surrogate Kelly") (collectively "Defendants"). Bartolini's lawsuit is brought pursuant to 42 U.S.C. § 1983; he alleges that Defendants conspired to deprive him of his due process and equal protection rights in underlying state probate court proceedings. (*See* Dkt. No. 1, Compl. at 8-10).

        Those proceedings were before Surrogate Kelly and dealt with the estate of Anthony V. Massimo ("Massimo"). *See In re Will of Massimo*, No. 2013-370/B, 2015 WL 9595181, at *1 (N.Y. Sur., Queens Cnty. Dec. 23, 2015) (table). Markee, a friend of the decedent, was the nominated executor in two testamentary instruments alleged to be Massimo's last will and testament and an affiliated codicil dated May 19, 2011 and February 9, 2012 respectively. *Id.* The documents before the court were copies, and the originals had been either lost or destroyed. *See id.* Ali, the decedent's housekeeper, was nominated as successor executor in those documents. *Id.* These instruments left the

1

entire estate to Bartolini's two sons John Franco Bartolini and Anthony Massimo, who were the decedent's grand nephews. *Id.* Nothing was left to Bartolini or to Orsola Bartolini, who is Bartolini's mother and the decedent's sister (and therefore the grand nephews' grandmother). 2015 WL 9595181, at *1.

Bartolini, who was proceeding *pro se*, filed objections to Markee's request to probate these two documents. *Id.* So did Orsola Bartolini. Another testamentary instrument, purportedly executed by Massimo on June 25, 1998, nominated Bartolini as executor, *id.*, and it left his entire estate to Orsola Bartolini. *Id.*

Surrogate Kelly held a trial on Orsola Bartolini's objections. *Id.* (Bartolini's objections had previously been dismissed). She initially failed to produce Bartolini as a witness at trial. Bartolini gave "seemingly contradictory statements" about his non-appearance: on the one hand while he wished to be heard at trial, he would not do so unless subpoenaed; but if he were subpoenaed, he would invoke his 5th Amendment right against self-incrimination. *Id.* In light of his abstruse communication, Surrogate Kelly summoned Bartolini, who appeared and testified under oath. Surrogate Kelly noted that "[b]ased upon the court's observation of Bartolini's demeanor as a witness at trial, his confusing and less than cooperative attitude in appearing before the court, his frequent antagonistic attitude towards the Petitioner and his counsel, and his sometime ridiculous testimony, it is certainly fair to characterize him as a less than [ ] endearing witness by any objective standard. Portions of his testimony also appeared to the court to stretch credulity to the breaking point." *Id.* at *4.

Notwithstanding the issues with Bartolini's testimony, Surrogate Kelly determined (in light of the absence of the original documents) there was insufficient evidence to establish that Massimo had not revoked the 2011 and 2012 instruments. As

2

such, he denied the application to probate the 2011 and 2012 instruments.[1] *Id*.

During the proceedings, Markee was represented by Mongelli. Greenspan served as guardian ad litem for the grandnephews. Surrogate Kelly's decision was rendered on December 23, 2015. The present litigation was initiated almost two years later on October 10, 2017 in the Southern District of New York. Bartolini sued Greenspan (the guardian ad litem), Ali (the housekeeper), Markee (the friend and executor), Mongelli (Markee's lawyer), and finally, Surrogate Kelly. Bartolini's *pro se* complaint alleges, in substance, that he was denied an opportunity to meaningfully participate in the probate proceedings and challenges the conduct of the proceedings, and seeks relief under § 1983. (*See generally* Dkt. No. 1, Compl. at 1-5).

The motion currently before the Court is Bartolini's motion to disqualify counsel for Mongelli, Markee and Greenspan. (Letter Motion to Disqualify Counsel and Firms dated February 12, 2018, Dkt. No. 28 ("Mot.")).[2] Specifically, Bartolini seeks to disqualify (1) Markee's counsel who are Martin C. Chow ("Chow"), an attorney at Michael F. Mongelli II, P.C. (the "Mongelli law firm"), and the Mongelli law firm; and (2) Mongelli and Greenspan's counsel who are Chow and the Mongelli law firm, and the firm of Baker Greenspan & Bernstein ("Greenspan law firm") respectively. Mongelli submitted a response on April 13, 2018. (Dkt. No. 36). Ali, who is not represented by

---

[1] The Court relied on the rebuttable presumption under New York law that an instrument is revoked when it was lost in control of the decedent, and the original document can no longer be found.

[2] The motion to disqualify is dated February 12, 2018 and was sent to Defendants on that date. Defendant Greenspan attached it as an exhibit to a letter to the Court filed on February 13, 2018. (Dkt. No. 23). On February 20, 2018, the Honorable Pamela K. Chen referred the motion to disqualify to the undersigned for decision.

3

counsel and has not made an appearance, is not a subject of the motion. Neither is Surrogate Kelly's counsel, which is the New York State Attorney General's Office.

The Court scheduled a hearing on the motion to disqualify for April 20, 2018. (Re-Scheduling Order dated March 16, 2018, Re-Scheduling Order dated March 22, 2018). Bartolini received notice, (Docket Entry dated March 16, 2018 (mailing copy of the March 16, 2018 order to Bartolini); Dkt. No. 32 (Defendant Greenspan serving the March 22, 2018 order as directed)), and Bartolini indicated that he knew the time of the hearing, (Dkt. No. 38). Bartolini did not appear until 45 minutes after the hearing was to begin, and after the Court had adjourned the hearing. (*Id.*). The Court provided Bartolini with an opportunity to provide any additional written submissions on his motion to disqualify by May 7, 2018. (Order to Show Cause dated April 20, 2018). Bartolini filed a letter raising arguments substantially similar to those in his original submission. (Reply in Support re Letter Motion to Disqualify Counsel and Firms dated May 4, 2018, Dkt. No. 40 ("Supplemental Letter")).[3] Mongelli also made a submission joined by Greenspan. (Dkt. Nos. 36, 39).

For the reasons stated below, the motion to disqualify counsel is denied.[4]

---

[3] This letter was mailed by Plaintiff to the Southern District of New York's White Plains courthouse on May 7, 2018. Plaintiff is advised that all correspondence must be sent to the pro se office of the Eastern District of New York's Brooklyn courthouse at 225 Cadman Plaza East, Brooklyn, New York 11201.

[4] The Court includes the following diagrams to assist the reader.

*In re Will of Massimo*, No. 2013-370/B

- Presiding Surrogate Judge: Hon. Peter J. Kelly
- Decedent: Anthony V. Massimo
- Petitioner: Lionel Bing Markee —represented by→ Counsel: Michael F. Mongelli *of the Mongelli law firm*
- Beneficiaries: John Franco Bartolini and Anthony Massimo —represented by→ Guardian ad litem: William R. Greenspan *of the Greenspan law firm*
- Witness: Leila Ali
- Objector: John A. Bartolini
- Objector: Orsola Bartolini





Discussion

I. Legal Standards

Motions to disqualify counsel are subject to "strict scrutiny," *Lamborn v. Dittmer*, 873 F.2d 522, 531 (2d Cir. 1989), because of their "potential to be used for tactical purposes." *Cohen v. Strouch*, No. 10-CV-7828, 2011 WL 1143067, at *1 (S.D.N.Y. Mar. 24, 2011) (*citing Murray v. Metro. Life Ins. Co.,* 583 F.3d 173, 178 (2d Cir. 2009)). A court should be "loathe to separate a client from his chosen attorney[,]" *In re Bohack Corp.*, 607 F.2d 258, 263 (2d Cir. 1979), because "[d]isqualification has a serious and immediate adverse effect by denying the client his choice of counsel[,]" *Soc'y for Good Will to Retarded Children, Inc. v. Carey*, 466 F. Supp. 722, 724 (E.D.N.Y. 1979). In deciding whether to disqualify an attorney, a district court must balance "a client's right freely to choose his counsel" against "the need to maintain the highest standards of the profession." *GSI Commerce Sols., Inc. v. BabyCenter, L.L.C.*, 618 F.3d 204, 209 (2d Cir. 2010). In practical effect, this means motions to disqualify should only be granted where the court concludes that there is a "significant risk of trial taint." *Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746, 748 (2d Cir. 1981). That risk exists, for example, "when an attorney represents one client in a suit against another" or uses confidential information about "an adverse party obtained through prior representation of that party[.]" *Id.* In deciding such a motion, the Court may "benefit from guidance offered by the American Bar Association (ABA) and state disciplinary rules[;]" however, "'such rules merely provide general guidance and not every violation of a disciplinary rule will necessarily lead to disqualification.'" *AVRA Surgical, Inc. v. Dualis MedTech GmbH*, No. 13-CV-7863, 2014 WL 2198598, at *2 (S.D.N.Y. May 27,

2014) (quoting *Hempstead Video, Inc. v. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005)).

A. <u>Motion to Disqualify Markee's Counsel</u>

Markee is represented by both Chow and the Mongelli law firm. Bartolini argues they should be disqualified from representing Markee because they also represent Mongelli, who is a co-defendant. His argument is meritless. Nothing supports disqualification of Chow or the Mongelli law firm from their representation of Markee.[5]

Bartolini cites New York Code of Professional Responsibility ("New York Code") Rule 1.7.[6] (Mot. at 1; Supplemental Letter ¶ 38). Rule 1.7 ("Conflict of Interest: Current Clients") provides:

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if a reasonable lawyer would conclude that either:
>
> (1) the representation will involve the lawyer in representing differing interests; or
>
> (2) there is a significant risk that the lawyer's professional judgment on behalf of a client will be adversely affected by the lawyer's own financial, business, property or other personal interests.

---

[5] Any party may make a disqualification motion. *See, e.g.*, *In re Fischer*, 202 B.R. 341, 352 (E.D.N.Y. 1996) ("[B]oth opposing counsel and the court have independent obligations to examine a possible attorney-client conflict"); *see also Adams v. Vill. of Keesville*, No. 07-CV-452, 2008 WL 3413867, at *10 (N.D.N.Y. Aug. 8, 2008) ("Given the court's oversight obligation, a motion to disqualify an attorney, even if brought by an unaffected party, is an appropriate means by which to bring the conflict issue to the court's attention.").

[6] Bartolini is unclear whether he is referring to the American Bar Association Model Rules of Professional Conduct ("ABA Model Rules") or the New York Code, 22 N.Y.C.R.R. § 1200 ("New York Code"). In his May 7 letter, Bartolini refers to the ABA Model Rules. (Supplemental Letter ¶ 6). In his motion to disqualify, he cites to a New York State Bar Association opinion interpreting the New York Code. (Mot. at 1).
Local Rule 1.3 requires members of the Eastern District of New York bar be familiar with the New York Code. Unless otherwise indicated, there is no material difference between the provisions of the ABA Model Rules and the New York Code provisions cited by Bartolini.

(b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:

> (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
>
> (2) the representation is not prohibited by law;
>
> (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
>
> (4) each affected client gives informed consent, confirmed in writing.

If a lawyer represents two clients with different interests (Rule 1.7(a)(1)) or if a lawyer's personal interests (including business or property interests) are in tension with a client's interest (Rule 1.7(a)(2)), there is a "concurrent conflict of interest." If such a conflict of interest exists, then it is appropriate to determine whether Rule 1.7(b) permits representation to continue in the face of that conflict. As explained below, Bartolini has not established the existence of a "concurrent conflict of interest" under either 1.7(a)(1) or 1.7(a)(2).

As to the representation of two clients (Rule 1.7(a)(1)), Bartolini provides no plausible argument—let alone any evidence—that Markee and Mongelli have any differing interests. And the Court cannot discern any. At the underlying probate proceeding Markee and Mongelli's interests were entirely aligned: Mongelli was serving as Markee's lawyer. Nothing in Surrogate Kelly's decision suggests that Mongelli and Markee's interests diverged during the probate proceeding, and nothing in the Complaint suggests that since the December 2015 decision their interests have diverged, let alone come into conflict. To the contrary, the Complaint alleges that Markee and Mongelli were in a conspiracy *together* to harm Bartolini. (Compl. at 8 ("Co-defendants

Mongelli, Markee, and Ali acting in concert intentionally created and submitted a false affidavit regarding lost will and lost codicil. . . .") (quotations omitted)). Bartolini repeats that assertion in the motion to disqualify. (Supplemental Letter ¶ 2). Even in a criminal conspiracy case, which this is not, the same counsel is permitted to represent codefendants up and until an actual conflict emerges. *See, e.g.*, *United States v. Armone*, 363 F.2d 385, 406 (2d Cir. 1966).

The only alleged conflict Bartolini identifies is that Markee may have to "sue, testify against, or disavow . . . Mongelli." (Mot. at 1). There is nothing to suggest Markee would ever be in that position; all evidence—as noted above from the probate proceeding itself—suggests Markee and Mongelli's interests are aligned. "[T]he mere fact of joint representation does not raise the risk of trial taint when an attorney represents two or more clients who are similarly situated with regard to a lawsuit." *Bulkmatic Transp. Co. v. Pappas*, No. 99-CV-12070, 2001 WL 504841, at *3 (S.D.N.Y. May 11, 2001) (quotations omitted). Bartolini's argument is just warrantless speculation that is insufficient to meet the high standard required for disqualification under Rule 1.7(a)(1). *Persh v. Petersen*, No. 15-CV-1414, 2015 WL 5773566, at *5 (S.D.N.Y. Oct. 2, 2015) ("Vague and conclusory allegations are insufficient to meet the burden required to disqualify counsel.").

Because Markee and Mongelli's interests do not diverge, Rule 1.7(a)(1) simply does not apply. The same is true for Rule 1.7(a)(2). Bartolini has not identified any personal interest of Chow and the Mongelli law firm that would "adversely affect" their representation of either Markee or Mongelli.[7]

---

[7] Bartolini's argument about the Mongelli law firm's ability to represent Mongelli is addressed below.

Since neither Rule 1.7(a)(1) nor (a)(2) are applicable to Chow and the Mongelli law firm's representation of Markee and Mongelli—*i.e.* there is no concurrent conflict of interest—there is no reason to determine whether any of the exceptions (in Rule 1.7(b)) permitting a representation to continue in the face of such a conflict are applicable. As a result, Chow and the Mongelli law firm's representation of Mongelli does not preclude them from representing Markee.

Bartolini also argues that the advocate-witness rule (Rule 3.7 "Lawyer As Witness") bars Mongelli's representation of Markee. (Supplemental Letter at ¶ 36). Rule 3.7 provides as follows:

> (a) A lawyer shall not act as advocate before a tribunal in a matter in which the lawyer is likely to be a witness on a significant issue of fact unless:
>
> > (1) the testimony relates solely to an uncontested issue;
> >
> > (2) the testimony relates solely to the nature and value of legal services rendered in the matter;
> >
> > (3) disqualification of the lawyer would work substantial hardship on the client;
> >
> > (4) the testimony will relate solely to a matter of formality, and there is no reason to believe that substantial evidence will be offered in opposition to the testimony; or
> >
> > (5) the testimony is authorized by the tribunal.
>
> (b) A lawyer may not act as advocate before a tribunal in a matter if:
>
> > (1) another lawyer in the lawyer's firm is likely to be called as a witness on a significant issue other than on behalf of the client, and it is apparent that the testimony may be prejudicial to the client; or
> >
> > (2) the lawyer is precluded from doing so by Rule 1.7 or Rule 1.9.

Rule 3.7(a) is inapplicable. Mongelli is not representing Markee or anyone else in this litigation; Markee is represented by the Mongelli law firm and Chow. Bartolini has not

9

suggested, and there is no basis to infer, that Chow or the Mongelli law firm will be a witness in this case.  Even accepting Bartolini's assertion that Mongelli himself will be a witness, that does not bar Chow or the Mongelli firm from representing Markee.  *E.g.*, *Murray*, 583 F.3d at 179 ("[F]our Debevoise lawyers are likely to be called to testify at trial.  Three of them are transactional lawyers who are not and will not be trial advocates; the fourth, a litigator, is a member of the trial team, but will not act as an advocate before the jury.  None of these witnesses, then, is properly considered trial counsel for purposes of Rule 3.7(a).").

Bartolini argues that Mongelli is, in fact, appearing as counsel in the case by, among other things, using Chow as his "cover."  (Supplemental Letter ¶ 9).  The Court finds no evidence of what Bartolini alleges.  Mongelli has never made an appearance in the case and has not, in any document, attempted to make a representation on behalf of Markee or any other defendant.  Bartolini appears to be basing his accusation of impropriety on the fact that Mongelli filed affidavits in connection with various motions. (Supplemental Letter ¶ 5 ("Mongelli is now trying to avoid the rules and laws by personally submitting 2 affidavits when he is not even an attorney of record."); ¶ 22 ("Attorney Chow has not submitted any affidavits, replies, or otherwise on behalf of his clients, only Mongelli Esq. has made sworn representations to this court.").  Parties may submit affidavits or declarations in connection with motions, whether the party brings such a motion or is opposing a motion brought against him or anyone else in the case. Mongelli has provided affidavits in connection with his motion to dismiss and in opposition to the motion to disqualify his counsel.  There is nothing improper about doing so.  There is nothing in those affidavits to suggest he is making representations in the capacity as a lawyer for a party.  He is making representations on his own behalf.  As

a result, the advocate-witness rule simply does not apply. *Ramey v. Dist. 141, Int'l Ass'n of Machinists & Aerospace Workers*, 378 F.3d 269, 282 (2d Cir. 2004) ("The advocate-witness rule applies, first and foremost, where the attorney representing the client before a jury seeks to serve as a fact witness *in that very proceeding.*") (emphasis in original). Mongelli is not simultaneously acting as a lawyer in this case and as a witness.

Rule 3.7(b)(1)—the imputation provision of the advocate-witness rule also is inapplicable. By its terms, it prohibits one lawyer from serving as an advocate where "another lawyer in the lawyer's firm is likely to be called as a witness on a significant issue other than on behalf of the client, and *it is apparent that the testimony may be prejudicial to the client*[.]" Rule 3.7(b)(1) (emphasis added). Presumably, Bartolini is suggesting that because Mongelli will be a witness in the case, Chow is disabled from serving as Markee's counsel. The problem with Bartolini's position is the same problem with his conflict-of-interest position. He has not established that Mongelli's interests are in tension with those of Markee's. And as a result, there is no reason to assume that Mongelli's testimony would be prejudicial to Markee, such that Chow (or another lawyer in Mongelli's firm) would be disqualified from representing Markee. *E.g.*, *Murray*, 583 F.3d at 179-80 (refusing to disqualify non-testifying lawyers from firm from serving as trial counsel; plaintiff failed "to establish the clear and convincing evidence of prejudice necessary to justify the extreme remedy of disqualification by imputation.").

Finally, Bartolini cites a series of rules—Rules 1.10, 1.16, and 1.18—that he misapprehends. None of them preclude Chow and the Mongelli firm from representing Markee. Rule 1.10 is an imputation rule that imputes a lawyer's conflict to all other members of his or her law firm. *See* Rule 1.10 ("Imputation of Conflicts of Interest"); *Blue Planet Software, Inc. v. Games Int'l, LLC*, 331 F. Supp. 2d 273, 278 (S.D.N.Y.

2004) ("As a consequence of an individual's disqualification, imputation may bar that attorney's law firm from serving the client."). So if Chow had a conflict—whatever that conflict was—it would be imputed to his firm, the Mongelli law firm. But there is no identified conflict that disables Chow. As discussed above, Chow is not conflicted from representing Markee by his representation of Mongelli. And therefore, the Mongelli firm is not disabled, by operation of Rule 1.10, from representing Markee.

Bartolini has likewise not established the necessary predicate for violation of Rule 1.16. That Rule ("Declining or Terminating Representation") enumerates a number of situations in which a lawyer should not represent a client. Those include, for example, an instance where a client wishes to bring a frivolous claim, *see* Rule 1.16 (a)(2), or where the lawyer knows his representation will result in a violation of the New York Code, *see* Rule 1.16 (b)(1). Bartolini suggests that Chow and the Mongelli law firm are required to withdraw because they know that their representation of Markee will result in a violation of Rule 1.7 ("Conflict of Interest; Current Clients"). That position is, as explained earlier, without merit. There is no conflict from the dual representation of Markee and Mongelli by Chow and the Mongelli firm. There is no violation of Rule 1.7, and, therefore, the mandatory withdrawal requirement under Rule 1.16 is not triggered.

With respect to Rule 1.18, that covers "Duties to Prospective Clients," but Markee is not a prospective client. He is an actual client, and the Rule cannot be a basis to disqualify Chow or the Mongelli firm from representing Markee. *See* Rule 1.18(a) (governing the "possibility of forming a client-lawyer relation with respect to a matter[.]").[8]

---

[8] Bartolini attaches a New York State Bar Association Committee on Professional Ethics Opinion #865 dated May 10, 2011. The opinion is inapposite. It addressed the

12

B.  <u>Motion to Disqualify Mongelli and Greenspan's Counsel</u>

Bartolini also seeks to disqualify Mongelli and Greenspan's counsel, which are their respective law firms.  (Mot. at 1 ("[B]oth the firms of Mongelli P.C. and Law Offices of Baker, Greenspan & Bernstein (BGB) appear to have ethical conflicts requiring Defendant partners to hire independent counsel not associated in any way with their firms.  Defendant Mongelli and Defendant Greenspan appeared as attorneys on behalf of their firms in the State matter that gave rise to the instant complaint.")).  There is no merit to this motion.

There is no barrier—either in the common law, the New York Code or the ABA Rules—to a lawyer being represented by his or her law firm.  "Members of the bar have, like all litigants, a right to select their own counsel.  While the right may not be absolute, it can be overridden only where compelling reasons exist."  *Bottaro v. Hatton Assocs.*, 680 F.2d 895, 897 (2d Cir. 1982) (holding that plaintiff who was also an attorney had a right to be represented by his own law firm even if he was a potential witness in the case, and that law firm may represent other plaintiffs in that case) (citing *Int'l Elecs. Corp. v. Flanzer*, 527 F.2d 1288, 1295 (2d Cir. 1975) ("It is implicit that a lay party may not only try his own case but also testify on his own behalf.  We do not think that because he is a lawyer he should be deprived of that right.  By the same token, he should be entitled to counsel of his own selection, including a law firm of which he was formerly a partner."));

---

question of whether an attorney who planned a client's estate can later serve as the lawyer to the estate's executor.  The only purported executor in the probate proceeding—and this case—was Markee, and Mongelli served as his counsel.  (Mongelli never represented Ali, the successor executor, who was never appointed).  There is nothing in the record to suggest that Mongelli served as Massimo's counsel in executing the two documents that Markee sought to probate.  And in any event, Markee was never named as the executor to Massimo's estate—the documents Markee sought to probate were rejected.

13

*Bonner v. The Bank of New York Mellon*, No. 15-CV-3280, 2016 WL 1426515, at *7 (E.D.N.Y. Feb. 22, 2016) ("Of course, lawyers who are members of the law firm represent the law firm in this matter. Such representation is clearly permitted under applicable law."), *report and recommendation adopted*, 2016 WL 1238234 (Mar. 28, 2016).

The only means to achieve a disqualification would be to show that the representation of Greenspan by his firm or Mongelli by his firm violates some provision of the New York code or common law. *Gabayzadeh v. Taylor*, 639 F. Supp. 2d 298, 304 (E.D.N.Y. 2009) ("Proskauer is permitted to represent itself, as well as its client, in any action where it is a defendant, in the absence of some inherent conflict or other basis for disqualification."). Nothing Mongelli cites is sufficient. He first argues that the firms are disqualified because their clients acted improperly in the underlying state court probate proceedings, and cites to alleged perjury and misdemeanor criminal violations by them. (Supplemental Letter ¶ 37). The allegations of misconduct are just baseless assertions by Bartolini that are supported by nothing in his current submissions or in the Court's review of the state probate proceedings. Even if there were misconduct, nothing prevents the lawyers accused of impropriety from retaining their law firm to represent them in a civil action. *E.g.*, *Kahn v. Wien*, No. 86-CV-2416, 1989 WL 65449, at *6 (E.D.N.Y. June 6, 1989) (finding no barrier to law firm representing law firm partners alleged to have acted improperly in creating joint venture).[9]

---

[9] He also cites to Rule 1.6 which governs the protection of client confidences. It is unclear on what basis this applies to the case and there is no allegation or basis to believe that either firm has disclosed any confidential communications in violations of that Rule.

Bartolini separately seeks to disqualify the Greenspan law firm because he alleges that Greenspan failed to report attorney misconduct, as required by New York Disciplinary Rules. As an initial matter, Disciplinary Rule 1-103(a), which Bartolini relies upon, was repealed; it was replaced by Rule 8.3 ("Reporting Professional Misconduct") in 2009. *See Hazen v. Hill Betts & Nash, LLP*, 936 N.Y.S.2d 164, 171 (2012) ("DR 1-103 of the Code of Professional Responsibility, which was in effect in August 2006, requires an attorney to report another attorney's violation of the rules . . . (now Rules of Professional Conduct rule 8.3)."). Rule 8.3 ("Reporting Professional Misconduct") now provides as follows:

> (a) A lawyer who knows that another lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question as to that lawyer's honesty, trustworthiness or fitness as a lawyer shall report such knowledge to a tribunal or other authority empowered to investigate or act upon such violation.
>
> (b) A lawyer who possesses knowledge or evidence concerning another lawyer or a judge shall not fail to respond to a lawful demand for information from a tribunal or other authority empowered to investigate or act upon such conduct.
>
> (c) This Rule does not require disclosure of:
>
>> (1) information otherwise protected by Rule 1.6; or
>>
>> (2) information gained by a lawyer or judge while participating in a bona fide lawyer assistance program.

Bartolini does not explain how this provision could bar Greenspan's firm from representing Greenspan. Bartolini has not alleged that other members of the firm failed to report misconduct. Unlike the conflict of interest rules, nothing in Rule 8.3 creates an imputation, such that Greenspan's failures to report—whatever they could possibly be—are to be imputed to disable all the other lawyers at his firm. *Cf. Solow v. Wellner*, 618 N.Y.S.2d 845, 847 (1st Dep't 1994) (although sanctions were warranted against

15

attorney for frivolous conduct, declining to impute misconduct as to attorney's law firm). (The Court has been unable to find a single case where a violation of Rule 8.3 or its predecessor Disciplinary Rule has led to imputation of the misconduct to the entire firm).

<u>Conclusion</u>

For the reasons stated above, the motion to disqualify counsel is denied.

The Court will grant one final opportunity for Bartolini to file a response to the motions to dismiss. To be clear, this order resolves the motion to disqualify and governs the briefing schedule on the motions to dismiss. Bartolini has until **June 22, 2018** to file any response to the motions to dismiss. No further extensions will be granted. If a response is not received on that date, the motions to dismiss that have been filed on the docket, (Dkt. Nos. 43-49), will be deemed fully briefed. If a response is received, Defendants may submit any reply by **July 6, 2018**, which provides two weeks as requested in Defendant Greenspan's May 10, 2018 letter. (Dkt. No. 39).

SO ORDERED.

*/s/ Sanket J. Bulsara* June 5, 2018
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York

16