UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
JOHN A. BARTOLINI,

                Plaintiff,

           - against -

MICHAEL F. MONGELLI ESQUIRE,
LIONEL BING MARKEE, LEILA ALI,
WILLIAM R. GREENSPAN ESQUIRE, and
HONORABLE PETER J. KELLY

                Defendants.
-------------------------------------------------------x

**MEMORANDUM & ORDER**
17-CV-06276 (PKC) (SJB)

PAMELA K. CHEN, United States District Judge:

      On October 10, 2017, Plaintiff John A. Bartolini ("Plaintiff"), proceeding *pro se*, filed this action against Defendants Michael F. Mongelli ("Mongelli"), Lionel Bing Markee ("Markee"), Leila Ali ("Ali"), William R. Greenspan ("Greenspan"), and the Honorable Peter J. Kelly ("Surrogate Kelly") (collectively "Defendants"), seeking injunctive relief and damages pursuant to the Due Process Clause of the Fourteenth Amendment, 42 U.S.C. § 1983, and New York Judiciary Law § 487. The complaint alleges, in essence, that the Defendants denied Plaintiff's constitutional rights of due process and equal protection by conspiring to prevent his participation in state probate court proceedings. (Dkt. 1, at ECF 8.)[1]

      All Defendants have moved to dismiss the complaint, with Greenspan and Surrogate Kelly filing separately and Mongelli and Markee filing jointly. (*See* Dkts. 43, 44, & 48.) On May 21, 2018, the motions to dismiss were referred to the Honorable Sanket J. Bulsara. On November 7, 2018, Magistrate Judge Bulsara filed his Report and Recommendations ("R&R"), recommending

---

[1] Citations to "ECF" refer to the pagination generated by the Court's electronic docketing system and not the document's internal pagination.

that the complaint be dismissed without prejudice against all Defendants. (Dkt. 67.) The R&R stated that any objections were to be filed by November 21, 2018. (*Id.*) Plaintiff's objections were filed by fax to the Court on November 27, 2018.[2] (Dkt. 69.) The Court presumes the parties' familiarity with the factual background in this case as contained in Magistrate Judge Bulsara's R&R.

## DISCUSSION

### I. STANDARD OF REVIEW

In reviewing an R&R, the district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). The district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id*. Where "the objecting party makes only conclusory or general objections, or simply reiterates the original arguments, the Court will review the R&R strictly for clear error." *Zaretsky v. Maxi–Aids, Inc.*, 2012 WL 2345181, at *1 (E.D.N.Y. 2012) (internal quotation marks omitted); *Mario v. P & C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) ("Merely referring the court to previously filed papers or arguments does not constitute an adequate objection").

### II. ANALYSIS

#### A. Dismissal Under *Rooker-Feldman*

Plaintiff's most significant objection is to the R&R's finding that the *Rooker-Feldman* doctrine bars his claims from proceeding in federal court. However, as the R&R explains, *Rooker-*

---

[2] On November 29, 2018, Defendants jointly moved to dismiss Plaintiff's objections to Judge Bulsara's R&R as untimely. (Dkt. 70.) However, given Plaintiff's *pro se* status and the brief delay involved, the Court denies Defendants' joint motion and considers Plaintiff's objections.

*Feldman* prevents federal district courts from considering claims "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005). As applied by the Second Circuit, *Rooker-Feldman* bars federal court jurisdiction when four conditions are met: (1) the federal-court plaintiff must have lost in state court; (2) the federal-court plaintiff must complain of injuries caused by a state-court judgment; (3) the federal-court plaintiff must ask the federal court to review and reject the state-court judgment; and (4) the federal-court plaintiff must have filed the federal suit after the state court issued its judgment. *Hoblock v. Albany County Board of Elections*, 422 F.3d 77, 85 (2d Cir. 2005).

Magistrate Judge Bulsara found that all four conditions are met in this case and would hold that all of Plaintiff's federal claims are barred on that basis. (Dkt. 67, at ECF 504-11.) Plaintiff objects that he should not be considered as having "lost" in state court because he "never got a fair chance to litigate his interest[,]" having been denied standing to appear in the state probate action. (Dkt. 69, at ECF 555.) The Court understands this objection to amount to the following argument: as a non-party to the state court proceeding, Plaintiff cannot be considered to have "lost" in state court, as required by *Hoblock*. On *de novo* review, this Court reaches the same conclusion as the R&R—i.e., that Plaintiff did indeed lose in state court for the purposes of *Rooker-Feldman*—though the Court's analysis differs in some respects from the R&R.

The R&R acknowledges that Plaintiff was not formally a party to the underlying state proceedings, as Surrogate Kelly prevented him from becoming a party when he ruled that Plaintiff lacked an interest that would give him standing to participate. (Dkt. 67, at ECF 505.) Perhaps recognizing the curious effect of characterizing a non-party as a loser in court proceedings, the

3

R&R looked to the treatment of similar plaintiffs by federal courts, finding that courts have previously held that a non-party can be considered to have "lost" in state court under certain circumstances. (*Id.* at ECF 505.)

Specifically, the R&R relies on two cases, *Roberts v. Hartz*, 113 F. App'x 306 (10th Cir. 2004) and *Wright v. Tackett*, 39 F.3d 155 (7th Cir. 1994), for the proposition that a would-be-intervenor becomes a state court loser for the purposes of *Rooker-Feldman* when his or her bid to intervene is denied by the state court. In *Roberts*, a New Mexico district court denied a grandmother's motion to intervene in proceedings brought by the State's Children, Youth, and Families Department to terminate her daughter's parental rights. *Roberts*, 113 F. App'x at 309. In *Wright*, an Indiana state court denied a husband's motion to intervene in a foreclosure action brought against his wife's property. *Wright*, 39 F.3d at 156.

The procedural similarities among these cases and Plaintiff's case are indeed instructive. However, to the extent that the R&R's analysis rests on *Roberts* and *Wright* in finding that the first step of the *Rooker-Feldman* test is met, this Court looks to additional support in the case law. The Court understands the reasoning (though not the result) of those decisions to have been superseded in large part by the Supreme Court's later decision in *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005). In *Roberts* and *Wright*, the Seventh and Tenth Circuits used a now-obsolete analysis to determine whether the claims brought by the federal plaintiff fell within the *Rooker-Feldman* jurisdictional bar, asking whether the claims were "inextricably intertwined" with the state court's judgment. *See Roberts*, 113 F. App'x at 310 ("[A]ll of Roberts' claims against the state defendants were either actually decided in the state-court proceedings or are inextricably intertwined with the state-court orders and judgments."); *Wright*, 39 F.3d at 157 ("Although Wright's complaint presented several constitutional—albeit conclusory—claims,

4

those claims are inextricably intertwined with the various state court determinations handed down previously."). Likewise, in *Exxon Mobil*, the Third Circuit interpreted the *Rooker-Feldman* doctrine as imposing the "inextricably intertwined" standard, barring jurisdiction over claims where a state court enters judgment after the plaintiff has filed suit in federal court. *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 364 F.3d 102, 106 ("[O]ur case presents an equally clear application of the inextricably intertwined circumstance, which exists when federal relief can only be predicated upon a conviction that the state court was wrong, or when the federal court must . . . take action that would render [the state court's] judgment ineffectual." (internal citations omitted)). On review of the Third Circuit's decision, a unanimous Supreme Court opined that the *Rooker-Feldman* doctrine "has sometimes been construed to extend far beyond the contours of the *Rooker* and *Feldman* cases." *Exxon Mobil*, 544 U.S. at 283. Reversing the Third Circuit's decision, the Supreme Court in *Exxon Mobil* clarified that the *Rooker-Feldman* doctrine only applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 284. Significantly, the Supreme Court did not apply or endorse the "inextricably intertwined" test relied upon by the Third, Seventh, and Tenth Circuits.

The Second Circuit has interpreted the holding in *Exxon Mobil* as a rejection of the "inextricably intertwined" test. In *Hoblock*, the Second Circuit explained:

> The "inextricably intertwined" language from *Feldman* led lower federal courts, including this court in *Moccio*, [95 F.3d 195, 199-200 (2d Cir. 1996)], to apply *Rooker-Feldman* too broadly. In light of *Exxon Mobil*—which quotes *Feldman*'s use of the phrase but does not otherwise explicate or employ it—it appears that describing a federal claim as "inextricably intertwined" with a state-court judgment only states a conclusion. . . . It is simply a descriptive label attached to claims that meet the requirements outlined in *Exxon Mobil*.

5

422 F.3d at 86-87 (internal citations omitted).

One year after *Exxon Mobil*, the Supreme Court came close to addressing the issue presented in this case. In *Lance v. Dennis*, 546 U.S. 459 (2006), registered Colorado voters sought to bring a federal-court challenge to a Colorado Supreme Court decision that invalidated a redistricting plan drafted by the Colorado state legislature. *Id*. at 460-62 (describing litigation before and after the Colorado Supreme Court's decision in *People ex rel. Salazar v. Davidson*, 79 P.3d 1221 (Colo. 2003)). The question presented was whether the *Rooker-Feldman* doctrine precludes a plaintiff, such as a state citizen, from bringing suit in federal court when they are in privity with a party, such as a state government, that lost in state court. *Id.* at 462-63. The Court held that it did not. The Court characterized its prior jurisprudence as holding "*Rooker-Feldman* inapplicable where the party against whom the doctrine is invoked was not a party to the underlying state-court proceeding." *Id.* at 464 (citing *Johnson v. De Grandy*, 512 U.S. 997, 1006 (1994), where *Rooker-Feldman* did not bar the United States from challenging a Florida reapportionment plan in federal court notwithstanding a state court judgment upholding the plan). The *Lance* Court reasoned that *Rooker-Feldman* could not be applied to the Colorado voters because they "did not participate in *Salazar*, and were not in a 'position to ask this Court to review the state court's judgment.'" *Id.* at 465 (quoting *De Grandy*, 512 U.S. at 1006).

Importantly for this case, however, the Court expressly declined to address whether *Rooker-Feldman* could ever be applied to deny jurisdiction where a plaintiff was not a named party to the state-court case, and, in fact, suggested that cases involving estates could represent such an instance. *Id.* at 466 n.2 ("In holding that *Rooker–Feldman* does not bar the plaintiffs here from proceeding, we need not address whether there are any circumstances, however limited, in which *Rooker–Feldman* may be applied against a party not named in an earlier state proceeding—e.g.,

where an estate takes a de facto appeal in a district court of an earlier state decision involving the decedent."). Only two Second Circuit cases (*Watley v. Katz*, 631 F. App'x 74 (2d Cir. 2016); *Davis v. Baldwin*, 594 F. App'x 49 (2d Cir. 2015)) address *Lance*, and neither develop the reasoning of that case in any significant way.

As this Court understands current doctrine, the core issue is whether Plaintiff, though not formally a party to the probate proceeding, had an opportunity—even if he did not make use of it—to appeal the alleged harm he suffered from the Surrogate's Court's ruling in an action in which he did not have standing to participate. *See Lance*, 546 U.S. at 465 (reasoning from the fact that the federal-court plaintiffs had no opportunity to ask for direct review of the state court's decision). Because the Appellate Division of the New York Supreme Court routinely addresses such questions of standing in probate proceedings and thus Plaintiff had an avenue in state court to pursue the relief he seeks here, the Court sees no difficulty in holding that Plaintiff "lost" in state court for the purposes of *Rooker-Feldman* doctrine. *See, e.g.*, *Matter of Quinn*, 2018 WL 5811791 (N.Y. App. Div. 2018) (holding on appeal that a college founder had an interest that granted statutory standing to petition for letters of administration); *In re Abady*, 906 N.Y.S.2d 321 (N.Y. App. Div. 2010) (holding on appeal that a surviving spouse lacked standing to object to a will being admitted to probate); *In re Hall*, 784 N.Y.S.2d 605 (N.Y. App. Div. 2005) (holding on appeal that a would-be objector in probate proceedings lacked standing to object). Plaintiff meaningfully participated in the state court proceeding, even though never formally recognized as a party to the proceedings. Accordingly, Plaintiff became a state-court loser when Surrogate Kelly held that he had no standing to press his interest in the state probate proceedings. Thus, Plaintiff's claims fall within the first prong of the *Rooker-Feldman* test articulated in *Hoblock*.

Additionally, though Plaintiff registers no specific objection to the R&R's findings regarding the second, third, and fourth prongs of the *Hoblock* test, the Court concurs with Judge Bulsara's finding that they are easily satisfied in this case. The gravamen of the complaint is that Plaintiff was injured by the state court's decision that he lacked standing in probate proceedings, thus denying him the opportunity "to be a party in the Proceedings" and to "discover, depose, cross examine, [and] partake in pretrial conferences [and other hearings]." (Dkt. 1, at ECF 8.) To remedy this injury, he asks this Court to invalidate the state court proceedings as unconstitutional, transfer the proceedings to a new state venue, and grant damages. (Dkt. 1, at ECF 6.) And, lastly, Plaintiff filed his federal complaint on October 10, 2017, well after the state judgment was finally issued on August 15, 2016. (*Compare* Dkt.45-2, at ECF 266 (Decree Denying Probate), *with* Dkt. 1, at ECF 1 (Plaintiff's Complaint)). These facts clearly establish that Plaintiff is "complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil*, 544 U.S. at 284.

Based on the foregoing analysis, the Court concurs with the result recommended by the R&R and further finds that the *Rooker-Feldman* doctrine, as clarified by *Exxon Mobil* and *Lance*, bars jurisdiction over Plaintiff's federal claims in this case. Accordingly, the Court overrules Plaintiff's objection to the application of *Rooker-Feldman* in this case.

### B. Dismissal on Alternative Grounds

Having considered Plaintiff's federal claims *de novo* and found a lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine, the Court finds sufficient basis to grant the Defendants' motions to dismiss. Accordingly, Plaintiff's objections to the alternative grounds for dismissal contained within the R&R have no practical significance to the disposition of Plaintiff's claims. Still, the Court conducts a *de novo* review where Plaintiff has successfully articulated a specific objection to the alternative grounds for dismissal, while reviewing for clear error where

Plaintiff merely re-litigates arguments presented to the magistrate judge. *See Mario v. P & C Food Markets, Inc.*, 313 F.3d at 766.

First, Plaintiff objects to the R&R's characterization of his pleading with respect to his claims under § 1983 as conclusory. (Dkt. 69, at ECF 554.) The Court finds, however, that this objection does not warrant a different result. Plaintiff's complaint must *plausibly* allege a constitutional violation to support his § 1983 claims. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). As noted in the R&R, the complaint contains no factual allegations that could plausibly support Plaintiff's assertion that the Defendants "conspired to deprive Plaintiff [of] the federally protected rights of due process and equal protection . . . ." (Dkt. 67, at ECF 515.) Even if the Court had subject matter jurisdiction over these claims, there would be no basis on which to reach a different conclusion than the one reached in the R&R.

Next, Plaintiff objects to the R&R's alternative ground for dismissal of his claim for injunctive relief on the basis of the probate exception to federal court jurisdiction. (Dkt. 69, at ECF 555.) The Court agrees with the R&R that Plaintiff's claim for relief, asking that this Court invalidate the state probate proceeding and transfer the matter to a different Surrogate's Court, (Dkt. 1, at ECF 6.), falls under the probate exception. Though the Second Circuit has instructed that the probate exception is to be construed narrowly, it must be applied where a federal court would be required to "(1) probate or annul a will, (2) administer (or invalidate the administration of) an estate, or (3) assume in rem jurisdiction over property that is in the custody of the probate court." *King v. Shou-Kung Wang*, 663 F. App'x 12, 13 (2d Cir. 2016). Because Plaintiff's claims for relief under the Due Process Clause would, by their very terms, require this Court to at least

temporarily assume jurisdiction over the probate matter in order to transfer the matter to a different state court, the probate exception prevents this Court from exercising subject matter jurisdiction. *See Capponi v. Murphy*, 772 F. Supp. 2d 457, 467 (S.D.N.Y. 2009) (holding that the probate exception prevents a federal court from transferring a probate matter to a different state jurisdiction).

Plaintiff also objects to the R&R's alternative ground for dismissal of Plaintiff's § 1983 claim against Defendant Greenspan, the state-court-appointed guardian ad litem, based on quasi-judicial immunity. (Dkt. 69, at ECF 555.) Plaintiff argues that Defendant Greenspan waived any possible quasi-judicial immunity defense by failing to raise it in his motion to dismiss papers. (*Id*.) As the R&R recognizes, a defendant may waive an immunity defense, at least for the limited purpose of a motion to dismiss, if he fails to explicitly raise it in his motion papers. *See Nationwide Freight Systems, Inc. v. Baudino*, 2013 WL 5346450, at *1 n.2 (N.D. Ill. 2013). And though Defendant Surrogate Kelly raised a judicial immunity defense in his memorandum of law, (Dkt. 46, at ECF 283), Defendant Greenspan made no mention of a possible immunity defense; rather, his memorandum of law sought to minimize any suggestion that he had acted at the direction of Defendant Surrogate Kelly (Dkt. 43-1, at ECF 225-226). Still, in light of the fact that Defendant Surrogate Kelly briefed the essentially identical issue of judicial immunity, the Court may reach the issue of quasi-judicial immunity on its own. *See Sanchez v. Doyle*, 254 F. Supp. 2d 266, 269 n.2 (D. Conn. 2003) ("The absence of argument, however, does not preclude the Court from raising the [judicial] immunity question on its own, especially where the parties have extensively briefed and argued the cousin issue of Stine's qualified immunity."). In any case, Defendant Greenspan has not waived the immunity defense for further dispositive motions, such as summary judgment.

*See* Fed. R. Civ. P. 12(g), (h)(2). Accordingly, the Court finds no merit in Plaintiff's objection to this alternative ground for dismissal.

Finally, the Court acknowledges Plaintiff's objection that certain "facts" were not considered by the R&R. In arguing that certain "facts" were "intentionally ignored," (Dkt. 69, at ECF 555.), Plaintiff merely recites arguments presented to the magistrate judge. (*See* Dkt. 66, at ECF 484, 486.) Such arguments are reviewed for clear error. *Zaretsky*, 2012 WL 2345181, at *1. Finding no clear error in the R&R's resolution of these renewed arguments, the Court overrules Plaintiff's objection.

### C. Dismissal of Plaintiff's State Law Claim

Although the R&R addressed Plaintiff's federal claims, recommending dismissal of all such claims, the R&R does not explicitly address the remaining state law claim under New York Judiciary Law § 487. Instead, it recommends the dismissal of the complaint in its entirety. This, too, is the correct result. A lack of subject matter jurisdiction over Plaintiff's federal claims means that the Court has no federal question jurisdiction in this case. Further, because it appears that the parties are all based in New York, (Dkt. 1, at ECF 4-5, 7.), the Court cannot exercise diversity jurisdiction, *see* 28 U.S.C. § 1332. Where a federal court lacks original jurisdiction, it cannot exercise supplemental jurisdiction over a state law claim. *Cohen v. Postal Holdings, LLC*, 873 F.3d 394, 399 (2d Cir. 2017) ("[A] district court cannot exercise supplemental jurisdiction unless there is first a proper basis for original federal jurisdiction." (internal citation omitted)). Accordingly, Plaintiff's sole state law claim must be dismissed without prejudice for Plaintiff to seek to bring it in state court.

### CONCLUSION

In sum, the Court adopts Judge Bulsara's Report & Recommendation, dated November 7, 2018, in its entirety, and also supplements it as explained above. Accordingly, the Court grants

Defendants' motion to dismiss as to all claims in this case. The Clerk of the Court is respectfully directed to terminate this matter.

                                        SO ORDERED.

                                        */s/ Pamela K. Chen*
                                        Pamela K. Chen
                                        United States District Judge

Dated:  December 4, 2018
         Brooklyn, New York